**Entered on Docket
November 08, 2012
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA**

FILED

NOV 06 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

### UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>PAUL DENBESTE and MELODY DENBESTE,<br><br>        Debtors.<br>_____<br><br>PAUL DENBESTE; MELODY DENBESTE,<br><br>        Appellants,<br><br>v.<br><br>MANDY POWER, d/b/a Judgment Enforcement USA,<br><br>        Appellee.<br>_____ | BAP Nos. NC-12-1087-HPaMk<br>         NC-12-1180-HPaMk<br>     (Related Appeals)<br><br>Bk. No.  10-13558<br><br>Adv. No. 11-01184<br><br><br><br><br><br>**M E M O R A N D U M**[1] |

Argued and Submitted on October 18, 2012
at San Francisco, California

Filed - November 6, 2012

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaroslovsky, Chief Bankruptcy Judge, Presiding
_____

Appearances:    James Patrick Chandler of Law Offices of James P. Chandler, argued for Appellants; Malcolm Leader-Picone of Bartlett, Leader-Picone & Young, LLP, argued for Appellee.
_____

Before: HOLLOWELL, PAPPAS, and MARKELL, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Paul and Melody DenBeste (the Debtors) appeal two orders of the bankruptcy court: the first is the denial of the Debtors' motion to dismiss an adversary proceeding, brought by their principal creditor, to deny them a discharge (BAP No. NC-11-1087); the second is the bankruptcy court's post-trial judgment denying them a discharge under § 727(a)(4)(A)[2] for knowingly and fraudulently making false oaths on their bankruptcy schedules (BAP No. NC-11-1180). We AFFIRM both orders.

## I.  FACTS

In October 2005, several judgments were entered in California state court against the Debtors in favor of John and Bradford DeMeo (the Judgments). The DeMeos assigned the Judgments to Walter Steinmann dba Judgment Enforcement USA, and Steinmann subsequently assigned the Judgments to Mandy Power dba Judgment Enforcement USA (Power) on April 14, 2010.

Power attempted to collect on the Judgments, the balance due on which was approximately $56,000, to no avail. On August 20, 2010, at Power's request, the state court appointed a receiver (Receiver), stating that it was "loath to order the drastic remedy of receivership, but it is obvious that all other methods of collection have been met with stubborn refusal to abide by the mandates of the Court's lawful orders and judgment."[3]

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] As part of its order appointing the Receiver, the state court addressed the Debtors' ongoing contention that the
(continued...)

Case: 11-01184   Doc# 46   Filed: 11/06/12   Entered: 11/08/12 13:48:28   Page 2 of 18

Thereafter, the Receiver seized $66,000 from the Debtors and the Debtors were required to show cause why the Judgments should not have been satisfied by the seized funds.[4] On September 15, 2010, the day before the state court stated it would issue a decision on the show cause order, the Debtors filed a chapter 13 bankruptcy petition.

The Debtors filed their bankruptcy schedules and statement of financial affairs on September 29, 2010 (Schedules). On October 21, 2010, the case was converted at the Debtors' request to chapter 7. The § 341 meeting of creditors was initially held on November 5, 2010, and continued to December 7, 2010. Power attended the December 7th § 341 meeting.

At the start of the meeting, the Debtors took an oath to testify truthfully. They testified that they had reviewed the Schedules and that the Schedules accurately reflected all their assets and creditors with the exception of one omission, which required correction. The Debtors stated that they left off a 60-acre parcel of real property in Lake County, California (the Property), for which they asserted they paid $125,000 and still owed $125,000. However, in response to questions from the

---

[3](...continued)
Judgments were void or unenforceable because Power (or its assignor) lacked standing due to noncompliance with California law regarding the filing of fictitious business name statements. The state court determined there was sufficient documentation supporting Power's right, as the lawfully designated assignee of the Judgments, to collect them.

[4] The majority of the Debtors' seized funds included deposit accounts associated with a family trust.

-3-

Trustee, as well as Power, the Debtors revealed that they also had bank accounts, horses, vehicles, interests in their corporate business, DenBeste Yard & Garden (the Corporation), and in a family trust, the DenBeste Family Trust (the Trust), that were omitted from the Schedules.

While the Debtors admitted they had several vehicles — including a Hummer, BMW, Corvette, and Chevy truck — they asserted those vehicles were owned by the Corporation. When Power questioned the Debtors as to why they had failed to list the Judgments, her attachments or the appointment of the Receiver in their statement of financial affairs and Schedules, or that Mr. DenBeste was a beneficiary to the Trust, the Debtors stated that they thought the information was listed on their Schedules.[5]

Due to the Debtors' omissions on the Schedules, the Trustee commented that: "It's pretty clear these Debtors have run a little fast and loose with their statement under penalty of perjury on these schedules, as well as their statements today" and that "they've probably given . . . enough ammunition" to bring an action to deny their discharge. The Trustee continued the § 341 meeting to December 21, 2010, in order for the Debtors to provide further information about their assets and make appropriate amendments to their Schedules. According to the bankruptcy court's docket, no amendments to the Debtors' Schedules were filed until eight months later in August 2011.

Power filed, on July 6, 2011, an adversary proceeding

---

[5] The Receiver was pursuing the funds from the Trust. It was not until sometime in March 2012, that the Trustee determined that the funds were not estate property.

-4-

against the Debtors alleging they knowingly and fraudulently filed materially false bankruptcy schedules and should be denied a discharge under § 727(a)(3) and (4) (the Complaint).[6]  Power alleged that the Debtors failed to schedule various assets, including the Property, bank accounts, horses, vehicles (including the Hummer, Corvette and a Harley Davidson motorcycle), and their beneficial interest in the Trust.

On August 10, 2011, the Debtors filed an amended petition and amended schedules (Amended Schedules).  Although the Amended Schedules corrected some of the omissions brought up at the § 341 meeting and referenced in the Complaint, they did not list the Debtors' interests in the Trust or the Corporation, nor any additional vehicles.

On August 26, 2011, the Debtors filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) or in the alternative, a Motion for Summary Judgment (Motion to Dismiss).  The Debtors asserted that they were entitled to judgment as a matter of law on the basis that Power lacked standing to pursue the Complaint because: (1) the Judgments were invalid as they lacked merit ("the judgments on which plaintiff bases her claims were not the result of any conduct by debtors, but by unmitigated, unrestrained and outrageous gamesmanship on the part of the underlying claimants"); (2) the assignment of the Judgments to her were invalid because of her failure to file a fictitious business name statement under requirements of

---

[6] Power sought and was granted two extensions of time in which to file the Complaint.

California business law; (3) Power could show no "injury in fact" traceable to the Debtors' conduct. Additionally, the Debtors asserted that the allegations in the Complaint were rendered moot by the Amended Schedules.

In her response to the Motion to Dismiss, Power provided the state court's order appointing the Receiver, which reaffirmed the validity of the Judgments and that Power had standing despite the Debtors' allegation that she (or her assignor) did not properly file a fictitious business name statement. Power also provided the bankruptcy court with copies of the recording of her fictitious business name statement.

After the Debtors filed a reply, a hearing on the Motion to Dismiss was held on October 14, 2011. At the close of the hearing, the bankruptcy court denied the Motion to Dismiss, finding that: (1) Power sufficiently alleged in the Complaint that she was a creditor of the Debtors having been assigned the Judgments, and (2) that even if the issue of compliance with state law was relevant to the Complaint, Power submitted sufficient documentation establishing her compliance with California's fictitious business name filing requirements. The bankruptcy court set a trial on the Complaint for March 8, 2012.

In December 2011, Power served discovery requests on the Debtors. The Debtors responded on January 27, 2012. The Debtors answered each question by reiterating the arguments they made in their Motion to Dismiss and challenging the merits of, and Power's right to collect, the Judgments. Also on January 27, 2012, the Debtors appealed the denial of the Motion to Dismiss.

The bankruptcy court held a trial on the Complaint on

-6-

March 8, 2012. At trial, Power entered into evidence documents from the Department of Motor Vehicles (DMV) that demonstrated there were nine vehicles registered in the name of the Debtors, including the Hummer, Corvette, two Harley Davidson motorcycles, three trailers, and two trucks. Mr. DenBeste testified that the Corporation owned the Hummer, Corvette, two trailers and two trucks, but he provided no evidence to support that testimony. The Debtors testified that they provided all their information to the Trustee and, although they again testified that they reviewed the Amended Schedules before signing them, they "did not notice" that certain assets, including the motorcycles, the Corporation, and the Trust were not listed.

Additionally, Mr. DenBeste made clear that he vigorously disputed the validity of the Judgments and Power's ability to collect them:

| | |
|---|---|
| POWER'S ATTORNEY: | In issuing the order appointing the receiver, the Sonoma County Superior Court overruled your objections to the validity of the judgments, correct? |
| MR. DENBESTE: | Correct. |
| POWER'S ATTORNEY: | So you understand that the issue has been litigated and resolved in an order, correct? |
| MR. DENBESTE: | Time-barred by fee arbitration. |
| POWER'S ATTORNEY: | Okay. And it is your intention, is it not, Mr. DenBeste, to continue to do everything in your power to resist any effort of Ms. Power to collect on these four judgments, correct? |
| MR. DENBESTE: | Time-barred by fee arbitration. |
| POWER'S ATTORNEY: | Is that a yes? |

```
 1          MR. DENBESTE:       Yes.
 2   Trial Tr. (March 8, 2012) at 45:4-18.
 3         After the trial, on March 19, 2012, the bankruptcy court
 4   issued a written decision (Memorandum Decision), finding that the
 5   Debtors' Schedules were "grossly false, and the [A]mended
 6   [S]chedules only slightly less so."  It further found that the
 7   Debtors concealed their assets with the intent to "thwart Power
 8   in her efforts to enforce the [J]udgments lawfully assigned to
 9   her."  Accordingly, the bankruptcy court determined that the
10   Debtors were not entitled to a discharge pursuant to
11   § 727(a)(4)(A) and (a)(2)(B).  The bankruptcy court entered a
12   judgment denying the Debtors' discharge the same day.  The
13   Debtors timely appealed.
```

**II.   JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 1334 and 157(b)(2)(J).  We have jurisdiction under 28 U.S.C. § 158.

**III.   ISSUES**

Did the bankruptcy court err in denying the Motion to Dismiss?

Did the bankruptcy court err in denying the Debtors a discharge?

**IV.   STANDARDS OF REVIEW**

"[W]hile denial of a motion to dismiss an adversary proceeding for failure to state a claim is generally interlocutory and thus rarely reviewed by us, any review of such a denial is de novo."  Waag v. Permann (In re Waag), 418 B.R. 373, 376-77 (9th Cir. BAP 2009); see also Wirum v. Warren

-8-

(In re Warren), 568 F.3d 1113, 1116 (9th Cir. 2009).

We apply the following standard of review to a judgment on an objection to discharge: (1) the bankruptcy court's determinations of the historical facts are reviewed for clear error; (2) the selection of the applicable legal rules under § 727 is reviewed de novo; and (3) the application of the facts to those rules requiring the exercise of judgments about values animating the rules is reviewed de novo. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010), citing Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004) aff'd, 212 Fed. Appx. 589 (9th Cir. 2006).

Intent is a factual matter reviewed for clear error. See, e.g., Beauchamp v. Hoose (In re Beauchamp), 236 B.R. 727, 729 (9th Cir. BAP 1999). A factual finding is clearly erroneous if it is "illogical, implausible, or without support in the record." In re Retz, 606 F.3d at 1196, citing United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009)(en banc).

## V. DISCUSSION

**A. Motion to Dismiss**

Neither the denial of a motion to dismiss nor the denial of a motion for summary judgment is a final order capable of appellate review. In re Waag, 418 B.R. at 376; Lum v. City & Cnty. Of Honolulu, 963 F.2d 1167, 119-70 (9th Cir. 1992). Generally, an order is final, rather than interlocutory, only when it fully adjudicates the issues raised and clearly manifests the court's intent to be its final act in the matter. Brown v. Wilshire Credit Corp. (In re Brown), 484 F.3d 1116, 1120 (9th Cir. 2007) (quoting Slimick v. Silva (In re Slimick), 928 F.2d

-9-

304, 307 (9th Cir. 1990)). However, interlocutory orders merge into a final order, when it is eventually entered; a timely appeal taken from a final order may cover both the final order as well as any interlocutory order leading up to the entry of the final order. <u>United States v. Real Prop. Located at 475 Martin Ln., Beverly Hills, CA</u>, 545 F.3d 1134, 1141 (9th Cir. 2008). Consequently, the bankruptcy court's order denying the Motion to Dismiss merged into the bankruptcy court's judgment entered after trial.

Nevertheless, the merger of an interlocutory dismissal order into a final order does not necessarily mean that the dismissal order will be reviewed on appeal. Review of a motion to dismiss may be denied if, at trial, there is adequate evidence presented to support the judgment. <u>Bennett v. Pippin</u>, 74 F.3d 578, 585 (5th Cir. 1996), <u>cert. denied</u>, 519 U.S. 817 (after a plaintiff prevails on trial on the merits, the sufficiency of the allegations in the complaint is irrelevant and moot). Additionally, the Ninth Circuit has held that the denial of a motion for summary judgment is not reviewable on appeal from a final judgment entered after a full trial on the merits. <u>Lorricchio v. Legal Servs. Corp.</u>, 833 F.2d 1352, 1358-59 (9th Cir. 1987); <u>see also</u> <u>Lum</u>, 963 F.2d at 1170 (review of denial of summary judgment after trial on merits is pointless academic exercise); Abbott Marie Jones, <u>Should The Exception Be The Rule? Advocating For Appellate Review Of Summary Judgment Denials</u>, 72 Ala. Law. 38 (Jan. 2011); Jesse Leigh Jenike-Godshalk, Comment, <u>Appealed Denials And Denied Appeals: Finding A Middle Ground In The Appellate Review Of Denials Of Summary Judgment</u>

-10-

Case: 11-01184   Doc# 46   Filed: 11/06/12   Entered: 11/08/12 13:48:28   Page 10 of 18

Following A Full Trial On The Merits, 78 U. Cinn. L. Rev. 1595 (Summer 2010).

The bankruptcy court's denial of the Motion to Dismiss decided nothing other than that: (1) the allegations in the Complaint were sufficient to state a claim for relief; and, (2) there were genuine issues of fact, which required a trial on the merits of the Complaint. Since the trial has occurred, there is no need to review whether that decision was erroneous, particularly because, as we discuss below, the bankruptcy court did not err in entering judgment in favor of Power.

However, we note that it may be appropriate to address the Debtors' argument regarding Power's standing, as questions of standing must be supported at each stage of litigation.[7] Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1140 (9th Cir. 2003). At the Motion to Dismiss stage, Power was only required to show that the facts, as alleged in the Complaint, and if proved, would confer standing. Id.

The Complaint alleged that: (1) Power had been assigned the Judgments, (2) the Receiver had been appointed to aid Power's collection efforts on the Judgments; and, (3) the state court had issued an order directing the Debtors to show cause why funds seized by the Receiver should not be used to satisfy the Judgments. These allegations were sufficient to establish that

---

[7] The Debtors did not assert at the trial any argument, or present any evidence, that Power lacked standing. Instead, Mr. DenBeste testified that the state court order appointing the Receiver overruled and resolved the Debtors' objections to the validity and enforceability of the Judgments. See Trial Tr. (Mar. 8, 2012) at 45:4-18.

-11-

Power was a creditor of the Debtors with standing to pursue the § 727 action. See 11 U.S.C. § 101(10)(A); § 727(c)(1); see also, Cal. Civ. Code § 954 (a judgment creditor may assign a judgment to a third party); Carter v. Brooms (In re Brooms), 447 B.R. 258, 265 (9th Cir. BAP 2011) (an assignee acquires all rights and remedies possessed by the assignor for the enforcement of the debt, subject to the defenses that the judgment debtor had against the assignor).

As noted by numerous courts, the integrity and viability of the bankruptcy process depend on the full, candid and complete disclosure by debtors of their financial affairs. In re Searles, 317 B.R. at 378; Garcia v. Coombs (In re Coombs), 193 B.R. 557, 563 (Bankr. S.D. Cal. 1996). Indeed, the Bankruptcy Code and Rules impose an affirmative duty on the debtor to disclose assets. 11 U.S.C. § 521(a)(1); Rules 1007, 1007-1, 1008; Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 785 (9th Cir. 2001).

> [T]he very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction . . . '[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure.'

Kavanagh v. Leija (In re Leija), 270 B.R. 497, 501 (Bankr. E.D. Cal. 2001)(citations omitted). Consequently, as a creditor of the Debtors, Power is sufficiently harmed by any failure on the part of the Debtors to provide truthful information in their

-12-

bankruptcy case, providing her with standing to maintain the
Complaint.[8]  Thus, to the extent the issue of standing is
reviewable here, we conclude that the bankruptcy court did not
err in denying the Motion to Dismiss.

**B.  Denial of Discharge**

A denial of a discharge is an act that must not be taken
lightly.  Consequently, § 727 must be construed liberally in
favor of the debtor and against the objector.  Roberts v. Erhard
(In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005) (citing
First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1342
(9th Cir. 1986)).  However, the opportunity for a fresh start is
available only to the "honest but unfortunate debtor."  Merena v.
Merena (In re Merena), 413 B.R. 792, 807 citing Grogan v. Garner,
498 U.S. 279, 286-87 (1990).  Therefore, a party objecting to a
debtor's discharge must prove by a preponderance of the evidence
that the debtor's actions or conduct fall within one of the
exceptions to discharge set forth in § 727.  Khalil v. Developers
Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP

---

[8] Both bankruptcy trustees and creditors may object to
discharge (in fact, under § 704(6), trustees have a duty to do so
if advisable).  However, the reality is that trustees "commonly
take a back seat when a creditor objects to discharge in order to
conserve resources."  Jacobson v. Robert Speece Props., Inc.
(In re Speece), 159 B.R. 314, 322 n.12 (Bankr. E.D. Cal. 1993).
   The Debtors also made an argument that joinder of the
Trustee to the Complaint was necessary.  See Appellants' Opening
Br., NC-11-1180.  This argument was not made to the bankruptcy
court at trial (or in the Debtors' Motion to Dismiss).
Accordingly, the argument is waived and we do not address the
merits of the argument.  Golden v. Chicago Title Ins. Co.
(In re Choo), 273 B.R. 608, 613 (9th Cir. BAP 2002).

-13-

2007), aff'd, 578 F.3d 1167, 1168 (9th Cir. 2009).

The Bankruptcy Code provides that a chapter 7 debtor shall be granted a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account." 11 U.S.C. § 727(a)(4)(A). The "fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." In re Retz, 606 F.3d at 1196 citing Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 63 (9th Cir. BAP 1999). To succeed on a § 724(a)(4)(A) claim, the objecting party must demonstrate that: (1) a false oath or statement was made by the debtor; (2) knowingly and fraudulently; (3) which was material to the course of the bankruptcy proceedings. Id.; In re Roberts, 331 B.R. at 882.

A false oath or statement is made when it occurs in the debtor's schedules or at an examination during the course of the proceedings. In re Roberts, 331 B.R. at 882. The Debtors testified at the § 341 meeting that their Schedules, signed under penalty of perjury, accurately reflected all their assets and liabilities except for the omission of the Property, which they stated was fully encumbered. However, it was later revealed during the meeting that they also omitted numerous other assets. On their Amended Schedules, the Debtors listed the Property, which turned out to be unencumbered, four bank accounts, and three horses, but they still failed to list all the vehicles discussed at the meeting, or their interests in the Corporation and the Trust (even though it was much later determined not to be

-14-

estate property).

A debtor's bankruptcy schedules must be verified or contain an unsworn declaration under penalty of perjury. 28 U.S.C. § 1746; Rule 1008. Accordingly, a false statement or omission in a debtor's schedules is a false oath under § 727(a)(4)(A). As a result, the bankruptcy court did not err when it found that the first element of § 727(a)(4)(A) was satisfied.

A false oath is "'material,' and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992); In re Retz, 606 F.3d at 1198. An omission or misstatement that "detrimentally affects the administration of the estate is material." In re Roberts, 331 B.R. at 883. The Debtors' omission of several significant assets on their Schedules as well as on their Amended Schedules prevented the Trustee and creditors from having accurate information, which affected the administration of the estate and the Trustee's and creditors' understanding of the Debtors' financial affairs and transactions. Therefore, the omissions were appropriately found by the bankruptcy court to be material.

The last element is intent. The Debtors must have "knowingly and fraudulently" made the omissions on their Schedules. A debtor "acts knowingly if he or she acts deliberately and consciously." In re Khalil, 379 B.R. at 173 (quoting In re Roberts, 331 B.R. at 883). Here, the Debtors acted deliberately and consciously because they listed their

-15-

assets on their Schedules and answered questions at the § 341 meeting relating to any omissions (other than the Property) in the negative when they actually had other significant assets, which were not listed on their Schedules.

The element of fraudulent intent is satisfied if the debtor made a false statement or omission in his bankruptcy schedules that he knew at the time to be false and that he made with the intention and purpose of deceiving creditors. Id. at 175. The Debtors assert that "[t]here was absolutely no evidence presented that the alleged omissions were anything more than inadvertent errors" or constituted an intent to defraud. Appellants' Opening Br. at 8, 16. The bankruptcy court found otherwise, and after reviewing the record, we conclude that the bankruptcy court's finding was not illogical, implausible or unsupported by the record.

Intent may be proven through "circumstantial evidence or by inferences drawn from a debtor's course of conduct." In re Retz, 606 F.3d at 1199; In re Khalil, 578 F.3d at 1168. An example of circumstantial evidence suggesting an intent to defraud may be found where the debtor fails to clear up all inconsistencies and omissions, even having had an opportunity to do so, such as by filing amended schedules. See In re Khali, 379 BR. at 176. Here, the Debtors did not file the Amended Schedules until eight months after the § 341 meeting and after Power had filed the Complaint.[9]

---

[9] The Debtors assert that the delay in amending their Schedules was because the Receiver had seized their financial records and would not return them. However, it is somewhat (continued...)

-16-

The record indicates that the Debtors' omissions were not the result of honest mistake promptly corrected by an amendment. The Amended Schedules failed to clear up all inconsistencies or omissions; they did not reflect the Debtors' ownership of several vehicles, which were, according to D.V. records, registered in their names. Furthermore, although the issue of the vehicles and motorcycles, as well as their interests in the Corporation and the Trust, were brought up at the § 341 meeting, the Debtors did not endeavor to ensure those items were included on the Amended Schedules. Instead, they insisted that the D.V. records were incorrect and that the Hummer, Corvette, two trailers and two trucks were owned by the Corporation and that they had discussed this with the Trustee. Still, they provided no evidence to demonstrate that the Corporation paid for or owned the vehicles. More importantly, simply providing information to the Trustee does not satisfy the Debtors' burden to disclose their assets on their bankruptcy schedules. In re Searle, 317 BR. at 377 (proper method of correcting any inaccuracy or omission must be through amendments in plain view of all parties in interest).

Debtors have a duty, throughout the bankruptcy case, to ensure that their bankruptcy schedules are accurate. Id. In this case, the Debtors' lack of attention in correcting any

---

[9](...continued)
disingenuous to argue that the Schedules could not have been promptly amended because they lacked information. Some of the assets that were omitted were readily known to the Debtors, for example, their interests in the Corporation and the Trust. Moreover, the issue of vehicles and ownership was discussed at the § 341 meeting.

-17-

omission appears reckless, particularly after the Trustee's admonition at the § 341 meeting that the Debtors were "playing fast and loose," and because there was a challenge to their discharge. See, e.g., In re Khali, 578 F.3d at 1168 (recklessness combined with other circumstantial evidence may prove fraudulent intent).

Finally, Mr. Densest admitted that he intended to resist any effort by Power to collect on the Judgments. Indeed, the bankruptcy court found that the Debtors' were motivated to conceal their assets because they "believe that the [Judgments assigned to [Power] were wrongly made by the state court and that the state court ruled improperly in holding that the [Judgments are enforceable. The [Debtors] therefore feel justified in obstructing their enforcement. This attitude is fully apparent in their responses to discovery." Memorandum Decision at 2. "Motive can support a finding of knowing and fraudulent intent." In re Khali, 370 BR. at 176.

After carefully reviewing the record, we have no difficulty concluding that the bankruptcy court did not err in finding that the Debtors knowingly and fraudulently made a false oath on their Schedules (and Amended Schedules), which materially affected the Trustee's and creditors' ability to fully determine the Debtors' financial affairs. Therefore, we AFFIRM the bankruptcy court's judgment denying the Debtors' discharge.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment denying the Debtors' discharge.

-18-

Case: 11-01184   Doc# 46   Filed: 11/06/12   Entered: 11/08/12 13:48:28   Page 18 of 18